UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEBRA FORDE, <br><br> Plaintiff, <br><br> v. <br><br> ARBURG GmbH + Co KG, <br> ARBURG, INC. <br><br> Defendants. | Case No. 20-cv-02904 <br><br> Judge John Robert Blakey |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Debra Forde sues Defendants Arburg GmbH + Co KG (Arburg GmbH) and Arburg, Inc. for an alleged injury she sustained while operating an "injection molding machine" that she claims Defendants designed, manufactured, distributed, and/or sold. Defendant Arburg GmbH, a German corporation, moves this Court to quash service of process and to dismiss Count I of Plaintiff's amended complaint for lack of personal jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(2). [30]. For the reasons explained below, this Court grants Defendant's motion and dismisses Arburg GmbH from this case without prejudice.

**I.   Background**

  **A.   Plaintiff's Claims**

On June 25, 2018, Plaintiff suffered an injury while working as a machine operator for Moldtronics, Inc, a company located in Downers Grove, Illinois. [36] at 1–2. Plaintiff caught her right hand and arm in the pressing components of an

1

injection molding machine, resulting in a "crushing injury to her right hand" and "severe burns from the hot metal mold and press." *Id*. at 2.

Plaintiff claims that Defendant Arburg GmbH, and its alleged subsidiary, Defendant Arburg, Inc., designed, manufactured and/or sold and distributed the machine in question, ARBURG Model 137791, to Moldtronics, Inc. at some point prior to the date of the alleged injury. *Id*. at 2–3. To redress her injury, Plaintiff sues both Arburg GmbH (Count I) and Arburg, Inc. (Count II) for negligence under product liability theories. *Id*. at 1–4. Only Arburg GmbH moves to dismiss. [30].

### B. Arburg GmbH

To support its motion to dismiss based upon improper service and lack of personal jurisdiction, Arburg GmbH introduces the declaration of Gerhard Boehm, its Managing Director of Sales and Service. [32-1]. Boehm attests that Arburg GmbH is a foreign corporation, organized and existing under German law, and maintains its headquarters in Lossburg, Germany. *Id*. at ¶ 4. Boehm further states that during the relevant time period (June 25, 2018 through April 17, 2020), Arburg GmbH was not incorporated in Illinois; was not registered, licensed, or otherwise authorized to do business in Illinois; did not have, and was not required to have, a registered agent for service of process in Illinois; did not maintain any Illinois employees; and did not engage in targeted advertising in Illinois. *Id*. at ¶¶ 6–11.

Additionally, Boehm attests that, if Arburg GmbH did manufacture the injection molding machine in question, the machine would have been designed, manufactured, and sold from its office in Germany to Polymer Machinery

2

Corporation, a Connecticut Corporation, in 1987. [32-1] at ¶¶ 12–13. According to Boehm, Arburg GmbH had no control over the machine in question following the sale and/or shipment of the machine to Polymer Machinery Corporation, nor did it sell or ship the machine to Moldtronics, Plaintiff's employer. *Id.* at ¶¶ 16–17. Arburg GmbH has never visited Illinois in connection with the machine, nor performed any maintenance on it. *Id.* at ¶¶ 21–22.

Boehm additionally attests that co-Defendant Arburg, Inc., a U.S.-based company, is not a subsidiary of Arburg GmbH, *id.* at ¶ 26, and that the two Defendants share no common officers; maintain completely separate corporate, recordkeeping, and accounting books; maintain separate articles of incorporation, corporate charters, bylaws, and other corporate formalities; and hold separate bank accounts. *Id.* at ¶¶ 27–30.

On April 17, 2020, Plaintiff attempted to effect service of process on both Arburg GmbH and Arburg, Inc. by serving a copy of the summons and complaint on Arburg, Inc.'s registered agent, CT Corporation System. *Id.* at ¶ 23; [32-2]. Boehm asserts, however, that Arburg GmbH did not appoint either Arburg, Inc. or CT Corporation System as its designated agent for service of process and did not authorize either entity to accept service of process on its behalf. [32-1] at ¶¶ 24–25.

Based upon this record, Arburg GmbH argues that this Court should quash service, or alternatively, dismiss for improper service and for lack of personal jurisdiction.

3

## II.     Legal Standard

### A.     Rule 12(b)(5)

Service of process is "fundamental to any procedural imposition on a named defendant." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). Federal Rule of Civil Procedure 12(b)(5) authorizes a party to file a motion challenging the sufficiency of service of process. Where a court finds insufficient process, it must necessarily also find that it lacks personal jurisdiction over that defendant. *United States v. Park*, 389 F. Supp. 3d 561, 567 (N.D. Ill. 2019).

In considering a Rule 12(b)(5) motion, this Court may look outside the pleadings, but must ultimately view the facts in the light most favorable to the plaintiff. *Id.*; *Manjarrez v. Georgia-Pac. LLC*, No. 12 C 1257, 2012 WL 4017951, at *3 (N.D. Ill. Sept. 12, 2012). The plaintiff bears the burden of demonstrating proper service. *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011); *Manjarrez*, 2012 WL 4017951, at *3. A court granting a Rule 12(b)(5) motion can either quash process without dismissing the action (to allow the plaintiff to re-attempt service) or dismiss the action where the plaintiff has no chance of establishing personal jurisdiction over the defendant. *Cardenas*, 646 F.3d at 1005; *Park*, 389 F. Supp. 3d at 567.

### B.     Rule 12(b)(2)

A motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) tests whether this Court has the "power to bring a person into its adjudicative process." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) (quotation omitted).

4

The plaintiff need not allege facts concerning personal jurisdiction in his or her complaint, but "once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (quoting *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)).

When a court rules on a Rule 12(b)(2) motion based upon written submissions without holding an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction. *Id.* at 392–93; *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). Where, as here, a defendant submits an affidavit regarding personal jurisdiction, this Court accepts as true any facts in the affidavit that do not conflict with the complaint or the plaintiff's submissions. *Curry*, 949 F.3d at 393. Further, where a defendant challenges by declaration a fact alleged in the plaintiff's complaint, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction. *Purdue Research Foundation*, 338 F.3d at 783. If the plaintiff "fails to refute a fact contained in the defendant's affidavit, that fact is accepted as true." *Mold-A-Rama Inc. v. Collector-Concierge-Int'l*, No. 18-CV-08261, 2020 WL 1530749, at *2 (N.D. Ill. Mar. 31, 2020); *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1045 (N.D. Ill. 2015).

**III. Analysis**

Arburg GmbH moves to quash service, and alternatively, to dismiss based upon improper service and for lack of personal jurisdiction. [32] at 4. This Court

5

considers first whether Plaintiff effected proper service before turning to personal jurisdiction.

### A. Improper Service

In moving to quash or to dismiss for improper service, Arburg GmbH contends that Plaintiff failed to follow proper procedures—namely, those set forth in the Hague Convention—for serving a Germany corporation. [32] at 4–6. Plaintiff counters that she properly served both Defendants through Arburg, Inc.'s registered agent because Arburg, Inc. is itself an agent of Arburg GmbH. [38] at 2–7.

Initially, this Court notes that because Plaintiff's "attempt at service occurred before the case was removed, Illinois service of process rules govern whether the attempt was legally sufficient." *Cardenas*, 646 F.3d at 1005.[1] Under Illinois law, a plaintiff can serve a domestic or foreign corporation by, among other things, "leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State." 735 Ill. Comp. Stat. 5/2–204; *In re County Treasurer & Ex-Officio County Collector of McDonough County*, 837 N.E.2d 947, 951 (Ill. App. Ct. 2005). The parties agree that Arburg, Inc. is neither a registered agent nor an officer of Arburg GmbH; thus, their dispute boils down to whether Arburg, Inc. qualifies as an "agent" for the purposes of service under Section 5/2-204. As the party seeking to effectuate service, Plaintiff bears the burden of establishing this agency relationship. *In re Subpoena To Huawei Techs. Co., Ltd.*, 720 F. Supp. 2d 969, 972 (N.D. Ill. 2010); *Chung v. Tarom, S.A.*, 990 F. Supp. 581, 584 (N.D. Ill. 1998).

---

[1] Plaintiff attempted service in April 2020, and Defendants removed this case in May 2020. [1].

Citing to Arburg GmbH's website, where it holds Arburg, Inc. out as its "USA subsidiary," Plaintiff attempts to establish this agency relationship by demonstrating a parent-subsidiary relationship between the two Defendants. [38] at 5; *see also Arburg Subsidiary USA*, available at https://www.arburg.com/en/company/locations/subsidiary-usa/ (last visited Sept. 23, 2020). But Boehm's declaration affirmatively states that Arburg, Inc. is not its subsidiary, [32-1] at ¶ 26, and Plaintiff does not offer anything further to rebut this evidence. Apparently conceding the point, Plaintiff argues that, under the doctrine of apparent authority, Arburg GmbH's representation on its website precludes it from disowning Arburg, Inc. as its subsidiary. [38] at 6.

Initially, an agent must have "actual authority to receive service of process for that service to be valid." *United States v. Norden Enterprises, LLC*, No. 01 C 8968, 2002 WL 1632633, at *2 (N.D. Ill. July 22, 2002); *see also Myles v. Reighter*, No. 15 C 9635, 2018 WL 1542391, at *4 n.1 (N.D. Ill. Mar. 28, 2018) (rejecting notion that apparent authority can create an agency relationship necessary to demonstrate proper service). And calling Arburg, Inc. a subsidiary on the website says nothing about whether Arburg GmbH granted such authority. Moreover, the mere existence of a parent-subsidiary relationship does not establish that the subsidiary qualifies as the parent's agent for service of process. *In re Application of High Point SARL for an Order to Conduct Discovery for Use in a Foreign Legal Proceeding Pursuant to 28 U.S.C. 1782*, No. 11 C 1892, 2011 WL 2297657, at *3 (N.D. Ill. June 8, 2011); *Chung*, 990 F. Supp. at 584. Instead, Illinois courts look to multiple factors to determine

whether a parent exerts a sufficient level of control over a subsidiary, considering whether:

> (1) the subsidiary was established and wholly owned by the parent;
> (2) the parent paid the salaries of the subsidiary's directors;
> (3) the parent guaranteed the subsidiary's lease;
> (4) the subsidiary's sole business was the sale of parts for the parent;
> (5) the parent listed the subsidiary's address in advertisements;
> (6) the subsidiary existed primarily to promote the sale and distribution of the parent's products;
> (7) the subsidiary was obligated to repair and sell parts for the parent's products;
> (8) the subsidiary was contractually required to apprise the parent of all aspects of its business;
> (9) the subsidiary was authorized to prosecute trademark infringement suits in the parent's name;
> (10) the parent controlled the subsidiary's choice of dealers, designation of products and services, stock levels, and methods of ordering;
> (11) the parent dominated the subsidiary's board of directors;
> (12) the subsidiary conducted its board meetings in the domicile of the parent; and
> (13) the subsidiary was listed on a consolidated financial sheet along with the parent rather than publishing its own annual report.

*Huawei Techs*, 720 F. Supp. 2d at 973; *Chung*, 990 F. Supp. at 584.

For her part, Plaintiff presents evidence on only the fifth and eleventh factors. As to the fifth factor, Arburg GmbH lists Arburg, Inc's address on its website. [38] at 5. And as to eleventh factor, Arburg, Inc.'s 2020 annual filing with the Virginia Secretary of State identifies Juliane and Michael Hehl, the Managing Partners of Arburg GmbH, as two of the company's three directors. [32-3]. Although this fact arguably shows that Arburg GmbH dominates Arburg, Inc.'s board of directors, it is not alone indicative of an unusually high degree of control where the parent and subsidiary observe other corporate formalities. *See Weber-Stephen Prod., LLC v. Char-Broil, LLC*, No. 16 C 4483, 2016 WL 5871505, at *3 (N.D. Ill. Oct. 5, 2016); *cf.*

8

*Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 365 (7th Cir. 2016) (refusing to pierce the corporate veil under Indiana law where the board membership between two entities overlapped but the "two boards were otherwise separate" in that each maintained its own invoices, bank accounts, and filed separate tax returns).

Here, the two parties clearly maintain separate corporate formalities. Boehm's declaration demonstrates that the two Defendants share no common officers; maintain completely separate corporate, recordkeeping, and accounting books; maintain separate articles of incorporation, corporate charters, bylaws, and other corporate formalities; and hold separate bank accounts. [32-1] at ¶¶ 27–30. These unrefuted facts show that the Defendants maintain independence in almost all respects and weigh strongly against finding the requisite control necessary to establish an agency relationship for the purposes of proper service. *See Huawei*, 720 F. Supp. 2d at 975. In short, this Court does not find that Arburg GmbH exhibited a high level of control over Arburg, Inc. such that Arburg, Inc. qualifies as its agent for service of process. This Court thus grants Arburg GmbH's motion to the extent based upon Rule 12(b)(5).

When granting a Rule 12(b)(5) motion, this Court can either quash service without dismissal or dismiss the action if Plaintiff cannot establish personal jurisdiction over Arburg GmbH. *Cardenas*, 646 F.3d at 1005; *Park*, 389 F. Supp. 3d at 567. As discussed below, this Court lacks personal jurisdiction over Arburg GmbH, and thus, dismissal is appropriate here.

9

### B. Lack of Personal Jurisdiction

Arburg GmbH also moves to dismiss for lack of personal jurisdiction. This Court, sitting in Illinois, may exercise jurisdiction over Arburg GmbH only if authorized both by the United States Constitution and, as applicable, Illinois law. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019); *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). Because the Illinois long-arm statute permits courts to exercise jurisdiction to the full extent permitted by the United States Constitution, the statutory and federal constitutional inquiries merge. *Curry*, 949 F.3d at 393; *Tamburo*, 601 F.3d at 700. Two types of personal jurisdiction exist: general jurisdiction, which applies only when the party's affiliations with Illinois "are so constant and pervasive 'as to render [it] essentially at home" here, *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); and specific jurisdiction, which remains "case-specific" and exists where the defendant has "purposefully directed" its activities at residents of the forum state and where the plaintiff's claim is "linked to the [defendant's] activities or contacts with" Illinois, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985); *Kipp v. Ski Enterprise Corp. of Wisconsin, Inc.*, 783 F.3d 695, 698 (7th Cir. 2015).

### 1. General Jurisdiction

Turning first to general jurisdiction, the Supreme Court has identified only two places where a corporation easily qualifies as "at home": (1) the State of its incorporation; and (2) the State where it maintains its principal place of business.

*Daimler*, 571 U.S. at 139. Any additional bases for general jurisdiction "would have to meet the stringent criteria laid out in *Goodyear* and *Daimler*," which "require more than the substantial, continuous, and systematic course of business that was once thought to suffice." *Kipp*, 783 F.3d at 698 (citation and internal quotation marks omitted).

Here, the undisputed record demonstrates that Arburg GmbH is a German corporation and maintains its principal place of business in Germany. Thus, neither of *Daimler*'s "exemplar bases" for general jurisdiction applies. 571 U.S. at 137. Nor does there exist any evidence that Arburg GmbH has any contacts, much less ones so "constant and pervasive," as to render it essentially "at home" in Illinois. *Id.* at 122.

Plaintiff suggests that the alleged "unique relationship" between Arburg GmbH and Arburg, Inc. might establish general jurisdiction. [38] at 15. But like proper service, personal jurisdiction "cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary." *Central States, Se. and Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000); *Abelesz v. OTP Bank*, 692 F.3d 638, 658–59 (7th Cir. 2012) (jurisdictional contacts of subsidiary can only be imputed to the parent where the parents exerts an "unusually high degree of control" or the subsidiary's existence is a mere formality). As explained above, the record reflects that the two co-Defendants observed corporate formalities and that Arburg GmbH does not exercise

11

an unusually high degree of control over Arburg, Inc. Accordingly, Plaintiff fails to establish a prima facie case of general jurisdiction.

### 2. Specific Jurisdiction

In assessing specific jurisdiction, this Court asks "whether the conduct underlying the claim was purposefully directed at the forum state." *Tamburo*, 601 F.3d at 702; *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014). Plaintiff relies upon the "stream of commerce" theory to establish specific jurisdiction, contending that Arburg GmbH "deliberately and intentionally targeted the Illinois market" to sell its injection molding machines and that one of those machines injured her. [38] at 14.

The stream of commerce theory posits that "personal jurisdiction may be appropriate over 'a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.'" *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 575 (7th Cir. 2020) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980)). While circuits have split over the continued viability of the stream of commerce theory, the Seventh Circuit recently reaffirmed that the theory remains alive here. *Id.* In the context of product liability cases, the stream of commerce theory provides a basis for specific jurisdiction where a defendant "takes steps to reach consumers in a forum state" such that it creates a relationship with the forum state "that has special relevance to the litigation at issue." *Id.* at 576; *see also World-Wide Volkswagen*, 444 U.S. at 298; *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014).

The record does not reflect sufficient contacts to support the exercise of specific jurisdiction here. Rather, it reflects that Arburg GmbH manufactured, designed, and sold the machine in Germany; and that it sold the machine to Polymer Machinery Corporation, a Connecticut corporation, in 1987. [32-1] at ¶¶ 12–13. Arburg GmbH did not sell or ship the machine to Moldtronic or any other Illinois purchaser; nor does it know how the machine ended up in Moldtronic's factory in Illinois. *Id.* at ¶¶ 15, 17. Further, Arburg GmbH has never visited Illinois in connection with the machine. *Id.* at ¶¶ 21–22. The only connection between Arburg GmbH and Illinois in this case appears to be Plaintiff's injury on the machine, which somehow landed here.

Certainly, Arburg GmbH might have been aware that, by selling the machine to a United States-based middleman in Polymer Machinery Corporation, the product likely would end up somewhere in the country, including in Illinois. But mere awareness of the "potential for harm in a particular state" fails to satisfy the personal jurisdiction inquiry. *Ariel Investments, LLC v. Ariel Capital Advisors LLC*, 881 F.3d 520, 522 (7th Cir. 2018) (defendant's knowledge that its conduct has raised "a potential for harm" in a State does not suffice); *Wilson v. Nouvag GmbH*, No. 15-CV-11700, 2018 WL 1565602, at *5 (N.D. Ill. Mar. 30, 2018) (the plaintiff must demonstrate more than mere placement of a product into the stream of commerce). Rather, the plaintiff must demonstrate that the defendant acted in or targeted Illinois. *Ariel*, 881 F.3d at 522; *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, No.

13

19 C 300, 2019 WL 2773650, at *2 (N.D. Ill. July 2, 2019), *aff'd*, 965 F.3d 571 (7th Cir. 2020). Plaintiff fails to show that Arburg GmbH targeted Illinois in any way.

Attempting to avoid this outcome, Plaintiff falls back on her theory that Arburg, Inc., Arburg GmbH's purported American subsidiary, resides in Illinois and that its contacts should be imputed to Arburg GmbH. [38] at 10. Again, this theory fails. First, as explained above, Plaintiff fails to establish that Arburg GmbH (to the extent it even constitutes a parent) controls Arburg, Inc. such that Arburg, Inc.'s contacts can be imputed to Arburg GmbH. Second, Boehm's declaration states that Arburg GmbH sold the machine in 1987, [32-1] at ¶ 13, and corporate formation records show that Arburg, Inc. was not even incorporated until 1990, [32-3] at 1. Thus, Arburg, Inc. did not exist when Arburg GmbH designed, manufactured, and sold the machine into the stream of commerce in the United States. *See Advanced Tactical*, 751 F.3d at 801 (specific jurisdiction focuses upon the defendant's suit-related contacts, not the plaintiff's contacts with the forum). For these reasons, this Court finds that it lacks specific jurisdiction over Arburg GmbH.

### C. Jurisdictional Discovery

Plaintiff alternatively seeks jurisdictional discovery to, among other things, flesh out the relationship between Arburg GmbH and Arburg, Inc. and to find evidence that Arburg GmbH targeted the Illinois marketplace in selling its machines. [38] at 12, 15.

Jurisdictional discovery is not automatic: at a minimum, Plaintiff must establish a prima facie showing of personal jurisdiction for this Court to permit

14

discovery. *Reimer*, 230 F.3d at 946; *Kisu Seo v. H Mart Inc. et al*, No. 19-CV-03248, 2020 WL 5547913, at *3 (N.D. Ill. Sept. 16, 2020); *Ticketreserve, Inc. v. viagogo, Inc.*, 656 F. Supp. 2d 775, 782 (N.D. Ill. 2009). In other words, Plaintiff must advance "proof to a reasonable probability" of facts necessary to establish jurisdiction. *Marks v. Worldwide Robotic Automated Parking, LLC*, No. 16-CV-8656, 2017 WL 2985757, at *3 (N.D. Ill. July 13, 2017) (quoting *Pentwater Equity Opps. Master Fund, Ltd. v. Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.*, 2016 WL 6476541, at *1 (N.D. Ill. Nov. 2, 2016)). Courts may also order jurisdictional discovery where there exists an ambiguity or lack of clarity in the factual record. *Zurich Am. Ins. Co. v. Tangiers Int'l LLC*, No. 18 C 2115, 2018 WL 3770085, at *2 (N.D. Ill. Aug. 9, 2018); *Arellano v. Tube Fabrication & Color, LLC*, No. 2:18-CV-342-JVB-JEM, 2019 WL 1332159, at *1 (N.D. Ind. Mar. 22, 2019).

In light of these standards, this Court declines to order any supplemental discovery regarding jurisdiction. Plaintiff has failed to make the requisite prima facie showing of personal jurisdiction, and the record is not otherwise ambiguous or unclear.

## IV. Conclusion

For the reasons explained above, this Court grants Defendant Arburg GmbH's motion to quash service and to dismiss for lack of personal jurisdiction [30]. Plaintiff's claim against Arburg GmbH (Count I) is hereby dismissed without prejudice. All previously set dates and deadlines stand as to Plaintiff and the remaining Defendant, Arburg, Inc.

Dated: January 15, 2021

Entered:

John Robert Blakey
United States District Judge